## FIRST NAT. BANK OF MERCEDES v. CROSSETT et al. (No. 7281.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 4, 1925.)

**1. Banks and banking ⚖=154(8)—Finding that deposit in bank belonged to members of exchange held warranted.**

In action by members of cotton exchange to recover bank deposit which bank applied on an obligation of exchange, evidence *held* to warrant finding that deposit belonged to members of exchange.

**2. Appeal and error ⚖=728(3) — Refusal to strike out witness' testimony not shown to be erroneous.**

Refusal to strike out witness' testimony *held* not shown to be erroneous where appellant failed to specify what parts of testimony it desired excluded, and did not attempt to segregate objectionable from unobjectionable testimony.

**3. Appeal and error ⚖=1047(3)—Refusal to strike out witness' testimony held harmless.**

Refusal to strike out a witness' testimony was harmless, where material facts testified to by him were properly shown in ways other than that objected to.

**4. Appeal and error ⚖=931(6)—Trial court presumed to have disregarded incompetent testimony.**

Admission of incompetent along with competent evidence would be deemed harmless; it being presumed that trial court disregarded incompetent evidence.

**5. Judgment ⚖=240—Rendering of joint judgment held erroneous, where plaintiffs entitled to judgment severally.**

Court erred in rendering judgment for all of plaintiffs jointly, where they prayed for judgment severally, and were not entitled to the other, either under law, pleadings, or prayer.

**6. Appeal and error ⚖=1153—Appellate court will render judgment which lower court should have rendered.**

Appellate court will render judgment for plaintiffs severally, in view of Rev. St. art. 1626, where lower court erroneously awarded judgment jointly, and plaintiffs alleged that each was entitled to recover a specific amount, and it was agreed that amounts so alleged were to be correct, if plaintiffs recovered on whole case.

Appeal from District Court, Hidalgo County; L. J. Polk, Judge.

Action by J. C. Crossett and others against the First National Bank of Mercedes. Judgment for plaintiffs, and defendant appeals. Reformed and affirmed.

Gause & Kirkpatrick, of Mercedes, for appellant.

John C. Myrick and Duval West, Jr., both of Harlingen, for appellees.

SMITH, J. The Rio Grande Growers' Exchange, a joint-stock association, was engaged in the years 1921 and 1922 as selling agent for its members as well as other cotton growers in the Rio Grande Valley. Appellee Crossett and 83 others intrusted certain cotton to the Growers' Exchange for the purpose of procuring its sale, in pursuance whereof the Growers' Exchange consigned the cotton to the firm of O'Hea Bros., cotton factors domiciled in London, England. The factors in due course disposed of the cotton and remitted the net proceeds of the sale to the Growers' Exchange, which deposited the amount in the First National Bank of Mercedes to the credit of an account designated in the books of the bank as "Rio Grande Growers' Exchange (O'Hea Cotton Account)." It was alleged, and the evidence showed, that this fund did not in fact belong to the Growers' Exchange but to the individual growers of the cotton, appellees herein, in sums determined by the amounts of cotton the respective growers put in the consignment to the factors, and that the bank was aware of this peculiar ownership. Now, the Growers' Exchange owed the bank a debt in a sum in excess of the amount of the O'Hea account, for which the bank held the Exchange's note, and when the latter failed to pay this note the bank appropriated the amount of the account and credited it upon the Growers' Exchange's obligation, thus converting appellees' funds to its own use.

Appellant, offering no testimony in its own behalf, sharply challenges the sufficiency of the evidence adduced by appellees to establish some of the facts set out above, and these contentions will be adverted to in their order. In the meantime, however, we adopt

the foregoing as the established facts of the case. The individual growers joined in bringing this suit against the bank, and prayed for judgment in favor of each for the amount of his individual claim. The cause was tried by the court without the intervention of a jury, and judgment was rendered against the bank in favor of the plaintiffs jointly, and not severally as prayed for.

As stated, appellant offered no evidence in the court below, contending there, as it does here, that appellees failed to make out a case. The question thus raised is presented in appellant's first proposition, that there was no "legal and competent evidence" that appellees "were the owners of or entitled to the deposit alleged to have been converted." This requires a consideration of the whole record in so far as it relates to the questions presented.

It was stipulated in an agreement made between the parties at the beginning of the trial that in August and September, 1922, an amount aggregating $2,299.71 was deposited by the Cotton Growers' Exchange in appellant bank to the credit of "Rio Grande Growers' Exchange (O'Hea Bros. Cotton Acc't)," and that, if appellees were entitled to recover at all, "then the amounts as set out in plaintiffs' amended original petition are correct, except as to the defendant (plaintiff) C. B. Wood," who was subsequently dismissed from the suit. In the pleading referred to the specific amounts claimed by the respective plaintiffs were set out in detail. These stipulations narrow the inquiry under appellant's first proposition to the simple question of whether or not appellees showed themselves to be the "owners of or entitled to" the O'Hea deposit in the bank; the amount of the deposit, and of the individual claims of the several appellees, and of the fact that the deposit was made by the Growers' Exchange to the credit of the O'Hea account, being conceded, if ownership should be shown.

It appears from the evidence that one C. B. Wood was secretary and treasurer of the Growers' Exchange at the time the cotton in controversy was shipped to Europe, and that he kept in touch with the affairs and records of the Exchange throughout the period embracing the transactions involved in this suit. Wood testified that he knew of his own personal knowledge that the cotton in controversy was shipped out by or for the individual plaintiffs, and that the O'Hea firm paid "the Exchange" for this cotton; that the Exchange made five shipments of cotton to O'Hea, the shipments being designated by numbers 1, 2, 3, 4, and 5; that O'Hea advanced more than the full amount of the price realized on shipments 1, 2, and 3, and hence no remittances were ever due or received from O'Hea upon those three consignments; that O'Hea made certain advances on shipments 4 and 5, but not enough to cover the prices received in Europe therefor, even after making up the losses on the first three shipments; that the balance due upon shipments 4 and 5, after deducting the advances made thereon and squaring the accounts on the first three shipments, aggregated $2,299.71 (the amount of the deposit in controversy), "so, if there were any further remittances from O'Hea Bros., that would be on account of shipments 4 and 5," which embraced the cotton in controversy. According to Wood's statement, the foregoing facts were within his own knowledge. He testified to a mass of other details of the transaction, but some of this testimony was based upon records the verity of which is questioned by appellant, and that testimony we have disregarded in summarizing Wood's testimony. We have not undertaken to quote the testimony of this witness, which is quite voluminous, but have set out only its effect as we understand it. In brief, the effect of that testimony is that at the time alleged appellees consigned their cotton through the Growers' Exchange to O'Hea Bros., who sold it, and that, after deducting for all advances and other charges, the net proceeds of the sale amounted to $2,299.71. The transaction is traced from this point by other witnesses, as will be seen. W. H. Griffith, the president and general manager of the Growers' Exchange, testified, according to the unchallenged statement thereof in appellees' brief, that:

"Two remittances for cotton were made by the O'Hea Bros., and that they were put in defendant bank in a fund called the O'Hea Cotton Account; that the purpose of placing money in the O'Hea Bros. Cotton Account was to keep it separate from any other fund, so that the proceeds might be distributed to the owners who had shipped the cotton; that the Exchange had a general checking account and an interest and sinking fund account in addition to the O'Hea Cotton Account; * * * that the two remittances aggregated approximately $2,300. He identified a deposit slip for the first remittance in the sum of $1,268.25, and stated that the account was held separate until a distribution of same could be made to farmers who owned it; that the Exchange never checked on this account; * * * that the Rio Grande Growers' Exchange did not own the O'Hea Cotton Account, but that it belonged to the men who shipped the cotton; and that the Exchange simply acted in selling the cotton and collecting and distributing the money."

W. N. Coe, sometimes secretary and treasurer of the Growers' Exchange, testified, according to appellees' brief:

"That he was authorized to transfer the 'Cotton Account' deposit in the First National Bank of Mercedes, Texas, to 'O'Hea Cotton Account.' * * * That this account which he had testified to as the O'Hea Cotton Account, showing $2,299.71, was money returned for sales of cotton made by O'Hea Bros. for the shippers—that is, the money."

(268 S.W.)

And according to the same authority R. F. King, one of the trustees of the Growers' Exchange, testified that:

"He attended the meetings of the directors quite regularly; that Mr. Haynes (president of defendant bank) met with them at Mercedes about July, 1922, at the packing shed with Mercedes locals; that the committee was called there to discuss, among other things,, a note of $5,500 that the Exchange owed defendant, and to discuss ways of paying same; * * * that it was explained to Mr. Haynes at that time that none of the O'Hea Cotton Account could be used to pay the said Exchange's note, for the reason that the money did not belong to the Exchange, but belonged to the growers individually, and the Rio Grande Growers' Exchange never authorized defendant bank to apply this money on the debt of the Exchange."

[1] We think the evidence of the several witnesses mentioned is sufficient to warrant the finding of the trial court that the fund impounded in the account belonged to appellees, and accordingly we must overrule appellant's first proposition and the assignments of error on which it is predicated.

[2-4] Appellant next complains of the refusal of the court upon motions to strike out the testimony of C. B. Wood, appellees' witness. Appellant does not in his proposition or ·assignment or brief specify just what parts of Wood's testimony it desired excluded, nor does it attempt to segregate the objectionable testimony from that which is not objected to, and for this reason appellant's proposition presents no specific question for decision. Much of the testimony of the witness is obviously admissible, and it was the duty of appellant to distinctly specify the very testimony· it desired to have excluded. We have carefully gone over the testimony of this witness, however, and have reached the conclusion that the material facts testified to by him were properly shown in ways other than that objected to, both by this witness as well as others, and, while it is true that it was disclosed on cross-examination of this witness that some of his facts were gotten from sources of doubtful authenticity, it will be presumed that the trial court disregarded the improper or incompetent testimony, thus rendering its admission harmless. This matter is presented in appellant's second proposition, which will be overruled.

[5] It is contended by appellant in its third and last proposition that the court erred in rendering judgment in favor of all the defendants jointly for the total sum recovered. This contention must be sustained. The plaintiffs below alleged that each of them owned and was entitled to recover a specified amount out of the converted funds. They prayed for judgment severally, and not jointly, and were entitled to the one, but not the other, either under the law or under the pleadings and prayer. Mayhew v. Valley,

etc., Assn. (Tex. Civ. App.) 216 S. W. 225.

[6] But the error in the form of the judgment does not require that the cause be remanded, in view of the state of the record. Appellees alleged in their trial petition that each was entitled to recover a specific amount, and the parties agreed that the amounts so alleged were to be taken as correct in event appellees should recover on the whole case, as they did. In this way this court is enabled, and it is its duty, to render the judgment that should have been rendered below. Article 1626, R. S.

Accordingly, the judgment of the court·below will be reformed so as to award to the several appellees the amounts claimed respectively by them in their first amended original petition, together with 6 per cent. interest on said amounts from the date of said judgment, and as so reformed the judgment will be affirmed, with the costs of this appeal taxed against appellees.

Reformed and affirmed.